Danae N. Benton (admitted *pro hac vice*)
Texas Bar No: 24080422
Florida Bar: 1002916
Larry Taylor, Jr. (admitted *pro hac vice)*
Oklahoma Bar: 34221
New Mexico Bar: 153622
Arizona Bar: 038277
Melissa Payne (admitted *pro hac vice)*
Texas Bar No: 24071156
Ohio Bar No. 0098027
**THE COCHRAN FIRM**
1825 Market Center Blvd., Suite 500
Dallas, TX 75207
Phone: 214-651-4260
Fax: 214-651-4261
Email: dbenton@cochrantexas.com
ltaylor@cochrantexas.com
mpayne@cochrantexas.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: ANGIODYNAMICS, INC., AND NAVILYST MEDICAL, INC., PORT CATHETER PRODUCTS LIABILITY LITIGATION | Case No.: 3:24-md-03125-JO-VET<br>MDL No. 3125 |
| ANITA FLETCHER<br>*Plaintiff,*<br>vs.<br>ANGIODYNAMICS, INC.; AND NAVILYST MEDICAL; INC.<br>*Defendants.*<br><br>This Document Relates to: Civil Action No. 3:25-cv-01518-JO-VET | Case No.: 3:25-cv-01518-JO-VET<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT ANGIODYNAMICS, INC.'S MOTION TO DISMISS PLAINTIFF ANITA FLETCHER'S THIRD AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES |

**Table of Contents**

I. Introduction ........ 7
II. Procedural History ........ 7
III. Legal Standard ........ 8
IV. Factual Background ........ 9
V. Argument ........ 10
A. Plaintiff has adequately alleged fraudulent concealment ........ 10
1. The MedWatch Response Satisfies Rule 9(b) ........ 10
2. Plaintiff's Third Amended Complaint alleges facts for each element of fraud ........ 12
B. Defendant is liable for the continuing tort of fraudulent concealment ........ 13
C. AngioDynamics is liable for Horizon Medical's Conduct under a Successor Liability Theory ........ 14
D. Discovery Rule and Defendant's fraud tolls statute of limitations ........ 17
E. The Northern District of Georgia has Specific Jurisdiction over Defendant AngioDynamics ........ 21
1. Defendant AngioDynamics' conduct falls under Georgia's Long-Arm Statute ........ 23
2. Due process favors jurisdiction in Georgia. ........ 26
F. The Northern District of Georgia has General Jurisdiction over Defendant AngioDynamics ........ 27
G. Georgia Substantive State Law Applies to Plaintiff's Claims ........ 29
1. Choice of law mandates that Georgia law govern Plaintiff's claims ........ 29
2. Georgia's Statute of Repose does not bar Plaintiff's claims ........ 30
3. Indiana's Statute of Repose is inapplicable ........ 33
H. Plaintiff has standing to bring a claim ........ 34
V. Conclusion ........ 35

## Table of Authorities

**Federal Statutes**
28 U.S.C. § 1332. .......... 7

**State Statutes**
Ga. Code Ann. § 9-3-33 (2026). .......... 17
Ga. Code Ann. § 9-3-96 (2026) .......... 19
Ga. Code Ann. § 9-10-91 (2026) .......... 23, 25
Ga Code. Ann. § 14-2-510(b) .......... 22
Ga. Code Ann. § 23-1-3 (2026) .......... 32
Ga. Code. Ann. § 23-2-51 (2026) .......... 19
Ga. Code. Ann. §23-2-53 (2026) .......... 19
Ga. Code Ann. § 51-1-11(2026) .......... 30, 31

**United States Supreme Court Cases**
*Asahi Metal Indus. Co. v. Superior Court,*
480 U.S. 102 (1987).......... 26
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......... 8
*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 .......... 26
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......... 8
*Daimler AG v. Bauman,*
571 U.S. 117 (2014).......... 28, 29
*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)) .......... 34
*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 21, 23, 25

**Federal Cases**
*Andrews v. Mazda Motor Corp.*
No. 1:14-cv-03432-WSD, 2015 WL 1851159 (N.D. Ga. Apr. 22, 2015)..... 8
*Ballew v. A.H. Robins Co.*,
688 F.2d 1325 (11th Cir. 1982) .......... 12, 18, 20
*Bell v. C.B. Fleet Holding Co.*,
No. 1:07-cv-84-GET, 2008 U.S. Dist. LEXIS 130153 (N.D. Ga. Aug. 15, 2008). .......... 13, 14
*Blue Cross & Blue Shield v. Weitz,*
913 F.2d 1544 (11th Cir. 1990) .......... 20

*Burch v. Remington Arms Co., LLC,*
No. 2:13-CV-00185-RWS, 2014 WL 12543887 (N.D. Ga. May 6, 2014). .......... 13
*Carr v. Ethicon, Inc.,*
No. 1:11-CV-2217-TWT, 2011 WL 4424457 (N.D. Ga. Sept. 20, 2011)). .......... 17, 18
*De La Paz v. DBS Mfg.,*
No. 1:09-CV-749-RLV, 2009 U.S. Dist. LEXIS 139924 (N.D. Ga. Sept. 10, 2009). .......... 29
*In re Chrysler Pac. Fire Recall Prods. Liab. Litig.,*
No. 22-cv-03040, 2025 WL 269166 (E.D. Mich. Jan. 21, 2025) .......... 21
*Glock v. Glock,*
247 F. Supp. 3d 1307(N.D. Ga. 2017) .......... 34, 35
*In re Acme Sec., Inc.,*
484 B.R. 475, 487 (Bankr. N.D. Ga. 2012) .......... 17
*Hill v. Morehouse Med. Assocs., Inc.,*
2003 WL 22019936 (11th Cir. Aug. 15, 2003) .......... 32, 33
*Malone v. Northpointe Bank,*
No. 1:23-cv-04656 2024 U.S. Dist. 2024 WL 4575703, (N.D. Ga. Sept. 30, 2024). .......... 8
*McCabe v. Daimler AG,*
No. 1:12-CV-2494-MHC, 2015 U.S. Dist. LEXIS 182877 (N.D. Ga. Aug. 19, 2015) .......... 34
*McLendon v. Georgia Kaolin Co.,*
837 F. Supp. 1231 (M.D. Ga. 1993) .......... 12
*In re* Paraquat Prods. Liab. Litig.,
No. 3:21-md-3004-NJR, 2022 WL 18821553 (S.D. Ill. Feb. 14, 2022) .......... 31
*Pedraza v. United Guar. Corp.,*
114 F. Supp. 2d 1347 .......... 10
*Tello v. Dean Witter Reynolds, Inc.,*
410 F.3d 1275 (11th Cir. 2005) .......... 21
*United States ex rel.* Silva v. VICI Mktg., LLC,
361 F. Supp. 3d 1245 (M.D. Fla. 2019) .......... 14
*Welch v. Celotex Corp.,*
951 F.2d 1235 (11th Cir. 1992) .......... 11
*Van v. Encore Med. GP, Inc.,*
No. 5:11-CV-321 (MTT) 2012 WL 32918, M.D. Ga. Jan. 6, 2012) .......... 18

**State Supreme Court Cases**

*Allstate Ins. Co. v. Klein*,
262 Ga. 599 (Ga. 1992) ........................................ 24, 28
*Auld v. Forbes*,
309 Ga. 893 (Ga. 2020). ........................................ 30, 33
*Brown v. Brown*,
209 Ga. 620 (Ga. 1953) ........................................ 21
*Bullard v. MRA Holding, LLC*,
740 S.E.2d 622, 625 (Ga. 2013) ........................................ 29, 35
*Bullington v. Union Tool Corp.*,
254 Ga. 283 (1985) ........................................ 13, 14
*Coe Payne Co. v. Wood-Mosaic Corp.*,
230 Ga. 58 (Ga. 1973) ........................................ 21, 25
*Cooper Tire & Rubber Co. v. McCall*,
312 Ga. 422 (Ga. 2021) ........................................ 23, 28
*Chrysler Corp. v. Batten*,
264 Ga. 723 (1994) ........................................ 31
*Farmex Inc. v. Wainwright*,
269 Ga. 548, 501 S.E.2d 802 (1998). ........................................ 17
*Ford Motor Co. v. Cosper*,
893 S.E.2d 106 (Ga. 2023) ........................................ 31
*Hunter v. Johnson*, 2
59 Ga. 21, 22 (1989). ........................................ 29
*In re* Jones,
293 Ga. 264 (2013) ........................................ 20
*Shipman v. Horizon Corp.*,
267 S.E.2d 244 (Ga. 1980) ........................................ 26, 30, 35
*S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*,
888 S.E.2d 553 (Ga. 2023). ........................................ 30, 32, 33, 34
*Blackford v. Welborn Clinic*,
172 N.E.3d 1219 (Ind. 2021) ........................................ 34

**Other State Cases**

*Aero Toy Store, LLC v. Grieves*,
631 S.E.2d 734 (Ga. App. 2006). ........................................ 26
*Brewer v. Samsung Elecs. Am., Inc.*,
917 S.E.2d 836 (Ga. App.) ........................................ 22
*Charter Peachford Behavioral v. Kohout*,
504 S.E.2d 514 (Ga. App. 1998). ........................................ 20
*Esener v. Kinsey*,

240 Ga. App. 21, 522 S.E.2d 522, 524 (Ga. App. 1999)............................ 32
*Hill v. Fordham,*
367 S.E.2d 128 (Ga. App. 1988) ............................................................... 27
*Pet Care Prof'l Ctr., Inc. v. BellSouth Advert. & Publ'g Corp.,*
464 S.E.2d 249 (Ga. App. 1995) ............................................................... 16
*Piedmont Pharmacy, Inc. v. Patmore*,
240 S.E.2d 888 (Ga. App. 1977) ......................................................... 18, 21
*POP 3 Ravinia, LLC v. Embark Holdco Mgmt.*,
875 S.E.2d 401 (Ga. App. 2022). ............................................................. 16
*Ney-Copeland & Assocs., Inc. v. Tag Poly Bags, Inc.,*
267 S.E.2d 862 (Ga. App. 1980). .................................................... 23, 24, 28
*Wilson v. Phillips*,
495 S.E.2d 904 (Ga. App. 1998) ............................................................... 19

**Other Authorities**

Fed. R. Civ. P. 9(b). ..................................................................... 8, 10, 13

## I. Introduction

Defendant's motion to dismiss fails because Plaintiff adequately pleads fraud with particularity, establishing personal jurisdiction and triggering both tolling and exceptions to the statute of repose. Horizon Medical committed actual fraud by falsely representing the port was not defective, and AngioDynamics perpetuated this concealment from Georgia. This fraudulent concealment constitutes an independent wrong under Georgia law, granting Georgia a paramount interest and estopping Defendant's repose defense. Finally, Defendant's arguments rely on disputed factual questions inappropriate for resolution at this stage.

## II. Procedural History

Pursuant to CMO No. 1, Plaintiff directly filed her Second Amended Complaint into this MDL, designating Georgia as the originating forum whose state law applies. (SAC ECF 11; MDL Dkt. 152). Following the Court's guidance, Plaintiff filed her Third Amended Complaint on June 24, 2026. (TAC ECF 26). Diversity jurisdiction exists under 28 U.S.C. § 1332.

## III. Legal Standard

To survive a motion to dismiss, Plaintiff must allege facts that, accepted as true, state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The Court draws all reasonable inferences

in Plaintiff's favor. *Andrews v. Mazda Motor Corp*., 2015 WL 1851159, at *9 (N.D. Ga. Apr. 22, 2015).

For fraud claims, Rule 9(b) requires particularity as to "time, place, and substance" of the alleged fraud. Fed. R. Civ. P. 9(b); *Malone v. Northpointe Bank*, 2024 WL 4575703, at *16-17 (N.D. Ga. Sept. 30, 2024). Courts relax this requirement where facts are within defendant's exclusive knowledge. *Hill v. Morehouse Med. Assocs.*, 2003 WL 22019936, at *3 (11th Cir. 2003).

Plaintiff has alleged that Defendant AngioDynamics' predecessor, Horizon, fraudulently concealed defect data and affirmatively misrepresented the port's safety in a MedWatch report from their Georgia headquarters. (TAC ECF 26 ¶25e). AngioDynamics perpetuated this fraud by continuously hiding these material, undiscoverable facts from Plaintiff. (TAC ¶25g).and that Plaintiff received the MedWatch report from her physician which failed to disclose that the device was defective. (TAC ECF 26 ¶25e). Defendant continued the actual fraud of Horizon Medical by continuing to conceal facts known to Defendant and undiscoverable to Plaintiff through due diligence. (TAC ¶25g).

## IV. <u>Factual Background</u>

At its core, this case centers on deliberate fraud. Horizon Medical deliberately concealed known fracture rates, material degradation data, and adverse event reports

while affirmatively misrepresenting to Plaintiff that its port device was not defective. In 2003, when Plaintiff's catheter fractured, her physicians submitted MedWatch Report No. 150059-2003-00005 to the Georgia-headquartered company seeking investigation. Horizon Medical deliberately deceived Plaintiff by falsely attributing the fracture to 'repeated access' rather than a design defect. (TAC ¶ 25c.) Horizon Medical manufactured ports in the early 2000s, and manufactured Plaintiff's port which was placed in December 2002. (Dwane Decl. ¶5)(TAC ¶¶90-91). RITA Medical Systems acquired Horizon Medical in 2005. (Dwane Decl. ¶ 7 at 2). AngioDynamics then acquired RITA in 2007, continuing the product line. Prior to the RITA merger, AngioDynamics acquired the VORTEX trademark directly from Horizon and continued to manufacture Horizon's Vortex ports. The corporate history is not in dispute.

AngioDynamics continued the fraud of its Predecessor which deterred Plaintiff from pursuing her legal claim because they knew the cause of her fractured catheter and concealed the truth, amounting to moral turpitude. Plaintiff did not learn that catheters could fracture from a defect in the port until Plaintiff saw attorney advertising in August 2023. (TAC ¶ 136).

## V. Argument

### A. Plaintiff Has Adequately Alleged Fraudulent Concealment

#### 1. The MedWatch Response Satisfies Rule 9(b)

Plaintiff's fraud claims are subject to Rule 9(b)'s requirement to allege the

"time, place and manner" of the fraud. *Pedraza v. United Guar. Corp*., 114 F. Supp. 2d 1347, 1356, 2000 U.S. Dist. LEXIS 9072, *27 (internal citation omitted) (allowing Plaintiff to amend fraud claims where the Court found that Plaintiff had not met the heightened pleading standard required by Fed Civ. Rul. 9(b)). However, courts relax this standard where facts, such as Horizon's internal decision-making, are within Defendant's exclusive knowledge. *See Hill v. Morehouse Med. Assocs*., Inc., 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003).

This Court has opined that "there could be a constellation of facts that, despite the fracture nature, that other facts could have made it such that you did not have that reason to suspect [a defect]." (ECF 17-3 at 34). The Third Amended Complaint pleads ample facts explaining Plaintiff's delayed discovery. After Plaintiff's nurse submitted the catheter fragment and explicitly requested a "written report documenting [Horizon's] findings/assessment" (TAC ¶208), Horizon Field Assurance Manager Bruce Mitchell replied on November 24, 2003, denying the defect. (TAC ¶104e). This response actively deterred Plaintiff from pursuing a claim until she discovered the concealment years later. (TAC ¶118). Furthermore, Defendant's own Dwane Declaration concedes Horizon manufactured these catheters. (Dwane Decl. ¶ 5, ECF 27-3). Drawing all reasonable inferences in Plaintiff's favor, she has sufficiently identified the actor responsible for the original

fraud. Where there is a question of fact, the presumption is that the Plaintiff's allegations are true. (*See Welch v. Celotex Corp.,* 951 F.2d 1235 (11th Cir. 1992)(denying defendant's motion for summary judgment on statute of limitations grounds holding that there was a genuine issue of material fact as to when Plaintiff learned of defendant's wrongful conduct); *See also Ballew v. A. H. Robins Co.*, 688 F.2d 1325, 1328 (denying Defendant's motion for summary judgment and holding "there is a genuine issue of fact as to when appellant knew or with reasonable diligence should have discovered the causal relationship between her injuries and appellee's alleged misconduct.")

**2. Plaintiff's Third Amended Complaint Alleges facts for each element of Fraud**

Plaintiff's allegations satisfy each element required under Georgia law. *See McLendon v. Georgia Kaolin Co*., 837 F. Supp. 1231, 1239-40 (M.D. Ga. 1993) .Horizon Medical made a false representation, that the port was not defective, and concealed material facts including fracture rates, degradation data, adverse reports from Plaintiff and her medical team. (TAC ¶¶ 87, 129, 138, 141, 193.) Horizon knew the representation was false when it possessed concealed data. (TAC ¶¶ 78-80.) The misrepresentation was made with intent to prevent a claim when Horizon responded specifically to deter Plaintiff from pursuing her MedWatch inquiry. (TAC ¶ 10.) Plaintiff relied on the misrepresentation and did not pursue a

claim. (*Id.*) Plaintiff suffered injury from the defective port. (TAC ¶ 92).

Defendant attempts to escape liability by asserting no duty to disclose—a glaring mischaracterization of Plaintiff's claim. Plaintiff does not allege mere silence; she alleges affirmative misrepresentation. Plaintiff has met the heightened pleading standard for its fraud-based allegations with their pleading as described in Section IV above.

Direct communication with Defendant in this case distinguishes this case from *Burch v. Remington Arms Co., LLC*, in which the Court found that Plaintiff had not met the 9(b) standard because Plaintiff did not allege any direct communication with Defendant. *Burch v. Remington Arms Co., LLC,* No. 2:13-CV-00185-RWS, 2014 WL 12543887, at *3 (N.D. Ga. May 6, 2014). As such, Plaintiff has met the 9(b) standard to survive a motion to dismiss.

**B. <u>Defendant is liable for the continuing tort of fraudulent concealment</u>**

Defendant conflates two separate concepts: the physical presence of a defective product and the continuation of wrongful conduct. The relevant inquiry for the continuing tort doctrine is not whether the port remained in Plaintiff's body, but whether Defendant's wrongful conduct continued after implantation.

Defendant is liable for the continuing tort of fraudulent concealment by continuing to conceal material information to Plaintiff's claims. Defendant's reliance

on *Bell v. C.B. Fleet Holding Co.* is misplaced. *Bell* involved a claim that the plaintiff was not continuously exposed to the product. *Bell v. C.B. Fleet Holding Co.*, No. 1:07-cv-84-GET, 2008 U.S. Dist. LEXIS 130153, at *6 (N.D. Ga. Aug. 15, 2008). Here, the issue is not continuous exposure, it is continuous concealment. Each day Defendant failed to disclose the true cause of the port fracture constituted a new act of concealment, tolling the statute. There is no prejudice because all fraudulent actions of Defendant's predecessors are imputed to Defendant, therefore, the "who" is immaterial. *United States ex rel. Silva v. VICI Mktg., LLC,* 361 F. Supp. 3d at 1252 (M.D. Fla. 2019)

### C. **<u>AngioDynamics is liable for Horizon Medical's Conduct under a Successor Liability Theory.</u>**

Under Georgia law, a successor corporation may be held liable for its predecessor's tortious acts where:

> (1) the successor expressly or impliedly assumes the predecessor's liabilities;
> (2) the transaction constitutes a de facto merger;
> (3) the successor is a mere continuation of the predecessor; or
> (4) the transaction was fraudulent.

*Bullington v. Union Tool Corp.*, 254 Ga. 283, 286 (1985).

As an initial matter, Plaintiff need not rely solely on the "mere continuation" doctrine, because the Third Amended Complaint pleads facts establishing that AngioDynamics is liable as a matter of *actual, formal corporate merger* — an independent and well-established basis for successor liability under Georgia law that

does not require any showing of "identity of ownership" at all. *Id.* Plaintiff's Third Amended Complaint alleges that on November 27, 2006, AngioDynamics executed a statutory merger agreement pursuant to which RITA Medical Systems, Inc. merged into AngioDynamics' wholly-owned subsidiary. (TAC ¶ 40-41.) This was not a mere asset purchase: RITA's stockholders converted their shares into AngioDynamics stock and cash, establishing direct continuity of equity ownership; RITA's separate corporate existence ceased entirely, with all of its rights, property, and business vesting in the surviving entity; and the surviving entity continued operating the same product line with the same research and development personnel as a wholly-owned, consolidated subsidiary with no assets segregated from AngioDynamics' own. (TAC ¶¶ 40-43, 48, 50.) RITA's own SEC disclosures likewise characterize the Horizon acquisition as a vehicle for corporate growth, not the preservation of a separately maintained company. (Third Am. Compl ¶ 15.) Furthermore, AngioDynamics' own FDA regulatory submissions demonstrate it absorbed the product line as its own, submitting a 510(k) for its 'SmartPort CT Series' that made direct equivalence claims to Horizon Medical's Vortex Ports. (TAC ¶ 45.) Even if the Court were to treat this as a mere continuation analysis rather than a formal merger, the same facts pleaded above satisfy that standard as well, and Defendant's own evidence does not hold up to scrutiny under either framework.

The Dwane Declaration's conclusory assertion that the acquisition did not result in “complete identity” of ownership is legally insufficient because Georgia law requires only “some identity of ownership.” *See POP 3 Ravinia, LLC v. Embark Holdco Mgmt.*, 875 S.E.2d 401, 406 (Ga. Ct. App. 2022) (Ga. Ct. App. 2022) (reaffirming the continuation doctrine applies when the new corporation, with the same or similar owners, continues the old corporation's business); *Pet Care Prof'l Ctr., Inc. v. BellSouth Advert. & Publ'g Corp.*, 464 S.E.2d 249, 250 (Ga. Ct. App. 1995) (holding that the continuation theory has been held applicable in situations where the purchasing corporation succeeds to the assets of a business partnership).

Defendant AngioDynamics argues that it cannot be held liable for the conduct of Horizon Medical because AngioDynamics did not directly acquire Horizon. However, AngioDynamics directly acquired the trademark VORTEX from Horizon, and continued to manufacture Horizon’s Vortex ports. (TAC ¶11-13). Defendant’s argument ignores well-established principles of successor liability that impose liability on a corporation that acquires another entity and continues its business operations. The Third Amended Compliant facially alleges facts that when construed in favor of Plaintiff support Plaintiff’s successor liability, and therefore Defendant’s Motion to dismiss should be denied.

Additionally, Defendant’s reliance on *In Re Acme* is misplaced because as

stated in another case Defendant's cite: "federal bankruptcy court decisions are not binding on Georgia courts." *POP 3 Ravinia, LLC v. Embark Holdco Mgmt., LLC*, 875 S.E.2d 401, 405 (Ga. Ct. App. 2022)(internal citations omitted). Defendant takes their *In Re Acme* quote out of context. The full quote is "*In the context of a contractual liability*, the essential elements for the imposition of successor liability under the 'mere continuation' theory are a substantial identity of ownership and a complete identity of corporate objects and assets." *In re Acme Sec., Inc.*, 484 B.R. 475, 487 (Bankr. N.D. Ga. 2012)(emphasis added). The Court further explains that "[d]ifferent standards for the imposition of successor liability may apply when the claim is based on the strict liability of a manufacturer of a defect product in tort e.g. *Farmex Inc. v. Wainwright*, 269 Ga. 548, 501 S.E.2d 802 (1998). Because such claims involve different policy considerations from those involved in a simple contractual claim, the more lenient rules for successor liability that apply in such case do not govern this matter." *In re Acme Sec., Inc.*, 484 B.R. 475, 487 (Bankr. N.D. Ga. 2012)(Fn 17). Therefore, Defendant's Motion to Dismiss should be denied.

### D. <u>Discovery Rule and Defendant's fraud tolls statute of limitations</u>

The statute of limitations for fraudulent actions in the state of Georgia is two years. Ga. Code Ann. § 9-3-33 (2026). A statute of limitations does not accrue "until the plaintiff discovers or in the exercise of reasonable diligence should have

discovered not only that he has been injured but also that the injury may have been caused by the Defendant's conduct." (TAC ¶ 112) (citing *Carr v. Ethicon, Inc.,* No. 1:11-CV-2217-TWT, 2011 WL 4424457, at *2 (N.D. Ga. Sept. 20, 2011)). Defendant cites *Van v. Encore Med. GP, Inc.*, No. 5:11-CV-321 (MTT) 2012 WL 32918, at *14 (M.D. Ga. Jan. 6, 2012), for the proposition that "the discovery rule only applies to cases involving 'continuing torts.'" (Def. Mem. 17-1 at 6-7). However, the immediately preceding sentence in *Van* criticizes defendants for "ignor[ing] Judge Story's recent decision in *Carr v. Ethicon*, specifically holding that the discovery rule applies to product liability actions involving implanted devices." *Id.* at *13-14 (rejecting Defendant's argument that the discovery rule should not apply to defective medical implants)(*See also Ballew v. A. H. Robins Co*., 688 F.2d 1325, 1326 (finding that a medical implant case was a continuing tort).

The plausibility pleading standard applies to Plaintiff's allegations regarding the discovery rule tolling the statute of limitations. This Court has stated, "I believe the baseline federal requirements is such that it has to be so that the inability to -- or the obvious statute of limitations failure has to be on the face of the complaint." (ECF No. 17-3 at 9). Plaintiff's Third Amended Complaint has plausibly alleged facts to invoke Georgia's discovery rule.

Georgia law provides two standards for tolling the statute of limitations.

*Piedmont Pharmacy, Inc. v. Patmore*, 240 S.E.2d 888, 900 (Ga. Ct. App. 1977). First where the tort is a continuing tort, the standard is Plaintiff must exercise ordinary care to discover the injury. *Id.* Second, where the fraud causes plaintiff to delay in discovering the cause of her injury, the standard is reasonable diligence. *Id.* Further, Georgia law allows tolling of statute of limitations due to fraudulent concealment allows Plaintiff's to bring fraudulent concealment claims against Defendants that are successors to their predecessor's fraud:

> "If the defendant *or those under whom he claims* are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

Ga. Code. Ann. § 9-3-96 (2026) (emphasis added). Georgia's fraud tolling statute is a procedural mechanism for addressing when limitations periods begin to run, and governed under Georgia law. Georgia defines fraud to include suppression of a material fact that a party is obligated to communicate, whether arising from confidential relations or the particular circumstances of the case. Ga. Code. Ann. §§ 23-2-51, 23-2-53. Defendant's disclosure obligation falls squarely within Georgia's fraud tolling doctrine. Fraudulent concealment tolls the statute of limitations under Georgia law where Plaintiff can prove more than "mere silence"[1] *Wilson v.*

[1] Plaintiff asserts that mere silence that continues an original actual fraud is enough to toll the statute of limitations and analyzes the "mere silence" rule in the alternative.

*Phillips,* 495 S.E.2d 904, 905 (Ga. App. 1998). Further, "[t]here must be evidence that there was an intent to conceal by silence or that the representations were false when made and were intended to mislead." *Charter Peachford Behavioral v. Kohout*, 504 S.E.2d 514, 520 (Ga. App. 1998).

The reasonable diligence standard governs, and Ms. Fletcher satisfied it. When her port fractured in October 2003, her Riverview Hospital physicians submitted a MedWatch report. Horizon Medical actively deflected blame by falsely attributing the fracture to "repeated access" rather than a design defect. This active deception, compounded by AngioDynamics' continued concealment, amounts to acts of moral turpitude[2] with an intent to deceive, tolling the statute of limitations under O.C.G.A. § 9-3-96. Whether Plaintiff exercised reasonable diligence is a quintessential factual question for the jury.

Defendant bears the burden of proving its statute of limitations defense. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990). When facts are disputed, whether a plaintiff knew or should have discovered the causal connection between her injuries and defendant's misconduct is a jury question. *Ballew v. A.H.*

---

[2] While Plaintiff had shown the actual fraud meets Defendant's briefed standard of moral turpitude, it is Plaintiff's case law supported position that the standard is whether the defendant acted with the intent to deceive and actually does deceive the plaintiff. In re Jones, 293 Ga. 264, 265 (2013)(adopting Black's Law Dictionary of moral turpitude)(finding moral turpitude means "everything done contrary to justice, honesty, ... or good morals.)

*Robins Co.*, 688 F.2d 1325, 1327 (11th Cir. 1982) (applying Georgia law). Adjudicating a limitations defense at the pleading stage is "particularly inappropriate" where concealment allegations could impact whether defendant is estopped from asserting the defense. *In re Chrysler Pac. Fire Recall Prods. Liab. Litig.,* No. 22-cv-03040, 2025 WL 269166, at *16–17 (E.D. Mich. Jan. 21, 2025); *see also Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1285 (11th Cir. 2005).

The question of whether Plaintiff exercised reasonable diligence to uncover the fraud is a question for the jury. *Piedmont Pharmacy*, 144 Ga. App. at 163 (quoting *Brown v. Brown,* 209 Ga. 620, 622 (Ga. 1953)). Therefore, Defendant's motion to dismiss should be denied because the reasonable diligence standard is a jury question, and Plaintiff's Third Amended Complaint facially describes the moral turpitude of both AngioDynamics and its predecessor Horizon Medical.

### E. The Northern District of Georgia has Specific Jurisdiction over Defendant AngioDynamics[3]

The central focus is where the wrongful action occurred rather than where Plaintiff's injury took place. The United States Supreme Court has held that the place of defendant's conduct is the controlling factor in determining whether the forum state has personal jurisdiction over the defendant. *Walden v. Fiore*, 571 U.S.

[3] Because personal jurisdiction is a fact-intensive analysis, Plaintiff requests jurisdictional discovery from Defendant AngioDynamics in order to fully analyze AngioDynamics' contacts with the state of Georgia.

277, 279 (2014). In *Walden,* Plaintiffs brought suit in Nevada because they were injured in Nevada. The Court found that "a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* The Court found that Nevada could not have personal jurisdiction over Defendant, but rather, all of Defendant's conduct occurred in Georgia, and Georgia was the proper forum. Further, under Georgia law, venue is proper "[i]n actions for damages because of torts, *wrong, or injury* done, in the county where the cause of action originated." *Brewer v. Samsung Elecs. Am., Inc.,* 917 S.E.2d 836 (Ga. Ct. App.), (citing Ga. Code Ann. § 14-2-510(b)(4)) (emphasis added).

In this case, Defendant's wrongful conduct occurred in Georgia. Plaintiff's fraudulent concealment claim does not arise from the product implantation in Indiana—it arises from the affirmative misrepresentation made from Georgia by Defendant's predecessor, Horizon Medical, and the continuing concealment perpetuated from Georgia by Defendant AngioDynamics during the 11 years it maintained Georgia operations. Defendant's continuing duty to disclose the true nature of Plaintiff's defective port was breached during this timeframe. Defendant's contention that the Mitchell communication cannot support jurisdiction because Mitchell was a "Horizon Medical field manager" rather than an AngioDynamics employee misapprehends the effect of the 2006 merger. As set forth above, RITA

Medical Systems — which itself succeeded to Horizon Medical's Vortex product line and obligations — merged directly into AngioDynamics' wholly-owned subsidiary, with RITA's corporate existence ceasing entirely and its shareholders becoming AngioDynamics shareholders. A successor-by-merger "steps into the shoes" of its predecessor not only for liability but for jurisdictional purposes as well; the predecessor's contacts and conduct are treated as the successor's own. *Ney-Copeland & Assocs., Inc. v. Tag Poly Bags, Inc., 154 Ga. App. 256 (1980)*. Mitchell's communication is therefore properly attributed to AngioDynamics regardless of which corporate entity employed him at the time it was made.

Because Defendant's and Defendant's predecessor's actions took place in the state of Georgia Defendant's due process rights have not been violated. Under *Walden v. Fiore*, the controlling factor is where the defendant's conduct occurred. Here, the tortious conduct—the fraudulent response to the MedWatch report and the ongoing concealment of known defects—originated in Georgia. Plaintiff's fraudulent concealment claim therefore arises from Defendant's Georgia contacts.

**1. <u>Defendant AngioDynamics' conduct falls under Georgia's Long-Arm Statute.</u>**

The Supreme Court of Georgia has found that "[t]he Long Arm Statute applies solely to persons who were nonresidents of Georgia *at the time the act or omission* complained of occurred, [and]…the requirement that a cause of action 'arise out of'

activities within the state (Ga. Code Ann. § 9-10-91), applies only to the exercise of personal jurisdiction over nonresidents." *Allstate Ins. Co. v. Klein,* 262 Ga. 599, 600 (Ga. 1992). (internal citations omitted)

First, Defendant's predecessor Horizon Medical was registered to do business in the state of Georgia, manufactured Plaintiff's port in the state of Georgia, was served a copy of Plaintiff's Medwatch report in Georgia, communicated to Plaintiff from Georgia that Defendant's predecessor was not liable and that its product was not defective. (TAC ¶ 25d). AngioDynamics, as Horizon's successor-in-interest, steps into Horizon's shoes for purposes of liability—and for purposes of jurisdictional exposure. As the Court of Appeals held in *Ney-Copeland & Assocs., Inc. v. Tag Poly Bags, Inc.,* 267 S.E.2d 862 (1980), successors inherit their predecessors' jurisdictional contacts. Even setting aside Horizon Medical's contacts, AngioDynamics had its own substantial contacts with Georgia. By Defendant's own admission, AngioDynamics 'continued . . . manufacturing efforts in Georgia' from 2007 until 2018. Dwane Decl. ¶ 9. AngioDynamics' own decade-plus of Georgia manufacturing operations independently satisfies this standard, wholly apart from any question of successor liability. Of note, Defendant's own declaration is internally inconsistent on this point: paragraph 4 categorically denies any Georgia manufacturing activity, while paragraph 9 concedes that AngioDynamics

manufactured products in Georgia for over a decade, only ceasing in 2018.

Georgia's Long-Arm Statute provides ways the Court can exercise jurisdiction of an out-of-state Defendant. Ga. Code Ann. § 9-10-91(1)–(3) (2026). The Georgia Supreme Court has interpreted its long arm statute as providing jurisdiction over the defendants as long as the Defendant conducts any business in the state of Georgia. *See Coe Payne Co. v. Wood-Mosaic Corp.,* 230 Ga. 58, 61 (Ga. 1973). In this case the fact that the Plaintiff's defective port was manufactured by a Georgia company who merged with Defendant is enough to establish personal jurisdiction over Defendant. Second, Defendant perpetuated fraud against Plaintiff as described in Section IV above. Under *Walden*, this Court must look to Defendant AngioDynamics' conduct that occurred in the state of Georgia. These facts support the second prong of Georgia's long arm statute, and therefore, the Court may exercise personal jurisdiction over Defendant for Defendant's continuing the fraud towards plaintiff by failing to disclose the true nature of the defects. For eleven years, AngioDynamics continued to sell port catheters with the same alleged design defects and continued to conceal the true cause of Plaintiff's catheter fracture. These were not Horizon Medical's contacts—they were AngioDynamics' own purposeful contacts with Georgia. Under any minimum contacts analysis, eleven years of manufacturing operations in Georgia constitutes purposeful availment in Georgia.

Because this Court must accept all allegations of the Third Amended Complaint as true, and Plaintiff has alleged sufficient facts to support subjecting Defendant to Georgia's Long Arm Statute this Court should find that the Northern District of Georgia has personal jurisdiction over Defendant AngioDynamics as long as "the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Aero Toy Store, LLC v. Grieves,* 279 631 S.E.2d 734, 736 (Ga. App. 2006).

**2. <u>Due Process Favors Jurisdiction in Georgia</u>**

The United States Supreme Court laid out four factors when considering whether the Court had personal jurisdiction over the defendant: (1) Burden on the Defendant, (2) Interests of the Forum State, (3) Interests of the Plaintiff, and (4) International Considerations. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 114 (1987). The fourth factor does not apply here because Defendant AngioDynamics is a domestic corporation, and its predecessor Horizon Medical was a domestic corporation. (Dwane Decl ¶ at 6). In this case, the burden on AngioDynamics to litigate this matter is slim as AngioDynamics is a domestic national company accustomed to national litigation. The burden on defendant does not outweigh Georgia's interest in this litigation. AngioDynamics cannot demonstrate that defending in Georgia would be "so gravely difficult and inconvenient" as to place it at a "severe disadvantage." *Burger King*, 471 U.S. at 478.

Georgia, however, has a weighty interest in providing redress for fraud committed by companies operating within its borders. Georgia's interest stems from where the original fraud occurred—Georgia, and where the fraud was perpetrated—Georgia.

Should this Court find that Georgia does not have personal jurisdiction over the Defendant it would shield any successor from liability in their predecessor's home state. The implication is that states would be unable to hold companies liable for actions that occurred in their state when the company is subsumed by a successor.

Plaintiff has an interest in litigating where the allegedly wrongful conduct occurred. Plaintiff chose to litigate in the forum where the actual fraud occurred. Plaintiff should invoke Georgia's laws because a Georgia company, Horizon Medical, barred her from bringing an action from its reply to her MedWatch report, and its successors continued to the fraudulent contact primarily in the state of Georgia. From a standpoint of judicial efficiency, Georgia courts are well equipped to apply Georgia fraud law to facts all occurring in the state of Georgia.

**F. <u>The Northern District of Georgia has General Jurisdiction over Defendant AngioDynamics</u>**

Defendant attempts to avoid personal jurisdiction by claiming that Defendant doesn't currently do business in the state of Georgia. However, the Georgia's Supreme Court has twice held that "Georgia courts may exercise general personal jurisdiction over any out-of-state corporation that is 'authorized to do or transact

business in this state *at the time a claim arises*.'" *See Cooper Tire & Rubber Co. v. McCall,* 312 Ga. 422, 422 (Ga. 2021); *See also Klein.,* 262 Ga. at 600. The underlying physical injury and the fraudulent conduct giving rise to Plaintiff's claims occurred in late 2003. Specifically, Plaintiff was diagnosed with a catheter fracture on October 8, 2003, prompting her health care provider to submit a MedWatch report to Horizon Medical shortly thereafter. (TAC ¶ 104(c)). At the time of this injury and Defendant's subsequent fraudulent concealment, Horizon Medical was headquartered in Georgia. (Dwane Decl. at ¶ 6, ECF No. 27-3). Because general jurisdiction is evaluated based on the defendant's location at the time the actionable conduct occurred, this Court must look to 2003. During that critical timeframe, Horizon Medical was headquartered in Georgia and unquestionably subject to general jurisdiction there.

Defendant's reliance on *Ney-Copeland & Assocs., Inc. v. Tag Poly Bags, Inc.*, 267 S.E.2d 862 (Ga. Ct. App. 1980), is misplaced. *Ney-Copeland* actually supports personal jurisdiction by holding that a successor corporation inherits the jurisdictional contacts of its predecessor. Just as in *Ney-Copeland*, AngioDynamics inherited Horizon Medical's Georgia contacts through its acquisition of RITA Medical. The Court's concerns in *Daimler AG* were that multinational corporations would be subject to jurisdiction in all 50 states if they placed their product into the

stream of commerce across the United States is not applicable here. *Daimler AG v. Bauman*, 571 U.S. 117, 141 (2014). Plaintiff is alleging that the focus of jurisdiction is where the fraudulent action took place, meaning Plaintiff only has one jurisdiction to choose from: Georgia. Because AngioDynamics is liable for Horizon Medical's conduct under Georgia's successor liability doctrine, it inherited Horizon Medical's jurisdictional exposure.

### G. <u>Georgia Substantive State Law Applies to Plaintiff's Claims</u>

#### 1. <u>Choice of Law Mandates that Georgia Law Govern Plaintiff's Claims.</u>

Under the *Erie-Klaxon* doctrine, a federal court sitting in diversity applies the choice-of-law rules of the forum state. *De La Paz v. DBS Mfg.*, No. 1:09-CV-749-RLV, 2009 U.S. Dist. LEXIS 139924, at *5 (N.D. Ga. Sept. 10, 2009). While Georgia's choice-of-law rule for torts dictates that the locus delicti "is the place where the injury sustained was suffered rather than the place where the act was committed," *Bullard v. MRA Holding, LLC*, 740 S.E.2d 622, 625 (Ga. 2013), Georgia strictly applies its own procedural laws and equitable doctrines to actions filed in its courts. *Hunter v. Johnson*, 259 Ga. 21, 22 (1989).

Statutes of limitation and their associated tolling mechanisms are procedural under Georgia law. *Id.* Therefore, regardless of where Plaintiff's physical injury occurred, Georgia's fraudulent concealment statute, O.C.G.A. § 9-3-96, governs the tolling of her claims. Furthermore, Georgia courts recognize a fundamental public

policy exception to the application of foreign law: Georgia will not apply another state's statute if it contravenes Georgia's deeply ingrained public policy. *Auld v. Forbes*, 309 Ga. 893, 895 (2020). Applying a foreign statute of repose to completely immunize a corporate defendant for active, documented fraud perpetrated from within Georgia's borders directly violates Georgia's foundational policy that a wrongdoer shall not benefit from their own concealment.

Georgia law recognizes that fraudulent concealment is an independent wrong that tolls applicable limitations periods. See *Shipman v. Horizon Corp.*, 267 S.E.2d 244, 246 (Ga. 1980). Defendant's reliance on *S. States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 888 S.E.2d 553 (Ga. 2023), is misplaced. That case addresses choice of law for the underlying tort, whereas Plaintiff's tolling argument rests on a separate and distinct wrong: Defendant's active fraudulent concealment that prevented Plaintiff from discovering her claim.

**2. <u>Georgia's Statute of Repose Does Not Bar Plaintiff's Claims</u>**

Georgia's Statute of Repose sets the general rule that no action can be brought within 10 years after the date of first sale for the date of sale for product use. Ga. Code Ann. § 51-1-11(b)(2). Plaintiff's claims fall within three exceptions to Georgia's statute of repose. Defendant's reliance on *S. States Chem*. ignores that Georgia's statute of repose contains express exceptions that Georgia courts have previously applied—even in cases involving foreign products. First, Georgia's

legislature carved out an exception for the statute of repose in regard to failure to warn claims codified at Ga. Code. Ann. § 51-1-11(c). The exception provides "'that [n]othing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.' With this language the legislature carefully excluded failure-to-warn causes of action from the statute of repose." *Chrysler Corp. v. Batten,* 264 Ga. 723, 727 450 S.E.2d 208 (1994). Plaintiff brings a failure to warn claim, which is not barred by Georgia's statute of repose.

Second, Georgia legislature exempts "willful, reckless, or wanton disregard for life or property from the statute of repose. Ga. Code. Ann § 51-1-11(c). *See also Batten.,* 264 Ga. at 727, (defining willful conduct as "an actual intention to do harm or inflict injury"; and defining wanton conduct as that "which is so reckless or so charged with indifference to the consequences ... [as to be the] equivalent in spirit to actual intent.") Reckless conduct occurs when a defendant knowingly acts or fails to act when there is a duty to act despite a high probability of substantial harm. *Ford Motor Co. v. Cosper*, 893 S.E.2d 106 (Ga. 2023). Georgia statute of repose exception was applied to the facts in *Paraquat. In re* Paraquat Prods. Liab. Litig., No. 3:21-md-3004-NJR, 2022 WL 18821553 (S.D. Ill. Feb. 14, 2022). The Court found that where a Plaintiff alleges that manufacturer knew of dangers and

intentionally concealed them that Plaintiff has pleaded sufficient facts to invoke the reckless disregard exception. *Id.* Here, Plaintiff alleges that Defendant and Defendant's predecessors knew of the defect and intentionally concealed the defect from Plaintiff.[4] Plaintiff's allegations fall squarely within the willful, reckless, or wanton disregard for life or property exception to Georgia's statute of repose.

Third, Defendants should be equitably estopped from raising the statute of repose defense. *S. States Chem.* forecloses tolling of statutes of repose, but it does not foreclose estoppel or statutory exceptions. Even if Indiana's ten-year statute of repose governs as substantive law, Defendant is equitably estopped from invoking that defense under Georgia law. *See* Ga. Code Ann § 23-1-3. Equitable estoppel is a procedural doctrine arising from the forum court's equitable jurisdiction that operates against a party, not against the legal right itself. *Esener v. Kinsey*, 240 Ga. App. 21, 522 S.E.2d 522, 524 (Ga. App. 1999). Indiana's views on equitable estoppel do not displace Georgia's procedural rules. Georgia applies its own equitable doctrines to actions filed in Georgia forums. *See De La Paz*, 2009 U.S. Dist. LEXIS 139924, at *5. Georgia courts hold that a defendant who commits fraud is estopped from raising the defense of the statute of repose. *Hill v. Fordham*, 367 S.E.2d 128, 132 (Ga. App. 1988). As the Court explained, applying the statute of repose where

---

[4] See Section IV above for details regarding Defendant and Defendant's predecessor's fraudulent, reckless actions.

the defendant engaged in fraud would be an incentive for a defendant to conceal his or her negligence from plaintiff. *Hill* 367 S.E.2d at 128 (finding that "the sun never sets on fraud."). Because the fraudulent concealment occurred in Georgia, Georgia's rules governing fraud, including the rule that fraud estops a defendant from invoking repose, should apply.

**3. Indiana's Statute of Repose Is Inapplicable**

*S. States Chem.* addressed a narrow question: whether a 2020 legislative amendment to Ga. Code Ann. § 9-3-51 could be applied retroactively to revive a previously time-barred claim but is silent on expectations to the statute of repose and equitable estoppel. *S. States Chem.*, 888 S.E.2d at 563. Plaintiff's tolling argument rests on a separate wrong: Defendant's fraudulent concealment that prevented Plaintiff from bringing a claim. This distinction is dispositive. First, Defendant's assertion that Indiana's statute of repose applies must fail because choice-of-law targets the fraud—not the product defect—which occurred entirely in Georgia . Second, even if *S. States Chem.* requires application of the statute of repose from the state where the injury occurred, Georgia courts retain discretion to refuse application of foreign law that violates Georgia public policy. *Auld v. Forbes*, 309 Ga. 893, 882 (Ga. 2020). Indiana's statute of repose contains no exception for willful conduct and no exception for fraud. *See Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1222

(Ind. 2021) (noting Indiana does not recognize equitable exceptions to statute of repose). *S. States Chem*. did not abrogate Georgia's long-standing rule that "the sun never sets on fraud."

This Court should decline to extend *S. States Chem*. to cases involving fraudulent concealment. Applying Indiana's absolute bar, which would endorse Defendant's fraudulent concealment, contravenes Georgia's fundamental public policy that fraud should not benefit the wrongdoer.

**H. Plaintiff has Standing to Bring a Claim**

In order to have standing a Plaintiff must show: (1) injury in fact, (2) causal connection between the injury and the Defendant's conduct, and (3) it is likely that the injury be redressed in a favorable manner. *McCabe v. Daimler AG*, No. 1:12-CV-2494-MHC, 2015 U.S. Dist. LEXIS 182877, at *7-8 (N.D. Ga. Aug. 19, 2015)(*See also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). Here, it is not in dispute that Plaintiff suffered a concrete injury. Plaintiff alleges that her injury was directly connected to Defendant's wrongful conduct occurring from the state of Georgia. In this instance, there is a high likelihood that Georgia courts would redress Plaintiff's injuries from fraud occurring in Georgia. Defendant's reliance on *Glock* is misplaced because in *Glock* the court was interpreting standing to bring a civil RICO case, which is not a claim raised in Plaintiff's Third

Amended Complaint. *Glock v. Glock,* 247 F. Supp. 3d 1307, 1318 (N.D. Ga. 2017). Defendant's argument conflates two distinct injuries: the physical injury caused by the device (suffered in Indiana) and the independent injury caused by Defendant's concealment (originating in Georgia). Georgia's own choice-of-law rule holds that the locus delicti "is the place where the injury sustained was suffered rather than the place where the act was committed." *Bullard v. MRA Holding, LLC*, 740 S.E.2d 622, 625 (Ga. 2013). Though Plaintiff's physical injury occurred in Indiana, her fraudulent concealment claim redresses a separate "independent wrong" under Georgia law. *See Shipman v. Horizon Corp.*, 267 S.E.2d 244, 246 (Ga. 1980). The injury of being "debarred and deterred" from suing, Ga. Code Ann. § 9-3-96, was inflicted directly from Horizon's Georgia headquarters via its deceptive MedWatch response. (TAC ¶¶ 10, 25b, 33, 104(e-h).)

## VI. <u>Conclusion</u>

Plaintiff adequately alleges that Horizon Medical committed actual fraud by misrepresenting the port's safety and concealing known defect data. Because this fraud originated in Georgia, Georgia law applies, conferring personal jurisdiction. AngioDynamics is liable as Horizon's successor, having perpetuated this concealment for eleven years while operating in Georgia. This active fraud

prevented Plaintiff from discovering her claims until August 2023; thus, her complaint is timely under Georgia's discovery and tolling rules. Furthermore, Defendant's willful conduct triggers statutory exceptions to Georgia's statute of repose, and Georgia's procedural equitable estoppel rules independently bar the defense. Defendant's Motion to Dismiss must be denied.

Dated: August 13, 2026

By: /s/ Danae N. Benton
DANAE N. BENTON
Attorney for Plaintiff
Email: dbenton@cochrantexas.com

**CERTIFICATE OF SERVICE**

I certify that I served a copy of this document on the Court and all parties by filing this document with the Clerk of Court through the CM/ECF filing system, which will provide electronic notice and an electronic link to the document to all counsel of record.

*/s/ Danae N. Benton*